In the Matter of the Estate of MAX GOLDSTEIN, Deceased. ERNA GOLDSTEIN, as Administratrix of the Estate of MAX GOLDSTEIN, Deceased, Appellant; NATIONAL CITY BANK OF NEW YORK, Respondent.

Argued February 23, 1949; decided April 7, 1949.

*Peter J. Kooiman, Frank Marcellino* and *John J. Abberley* for appellant. I. The Surrogate's jurisdiction to grant letters of administration and to make the decree under appeal was not in any wise dependent upon proof of death by more than the fair preponderance of the evidence. (*Griffith* v. *Frazier*, 8 Cranch [U. S.] 9; 2 Warren's Heaton on Surrogates' Courts [1948 Supp.], p. 160.) II. The evidence of death presented to the Surrogate was competent, and supports the finding of death. (*Sturla* v. *Freccia*, 5 App. Cas. 623; 5 Wigmore on Evidence, §§ 1398, 1671a; *Sergeson* v. *Sealey*, 2 Atk. 412; *Johnston* v. *Compagnie Generale Transatlantique*, 242 N. Y. 381.) III. The Surrogate's ordinary jurisdiction over decedent estates is in no wise restricted by subdivision 2 of section 119 of the Surrogate's Court Act, which extended the court's jurisdiction over estates of " absentees ". (*Coler* v. *Corn Exch. Bank*, 250 N. Y. 136, 280 U. S. 218; *Scott* v. *McNeal*, 154 U. S. 34.)

*Paul L. Weiden* for Permanente Commissie tot de Algemene Zaken van het Nederlandsch-Israelietische Kerkgenootschap and others, *amici curiæ*, in support of appellant's position. The Dutch decree certified not probable or presumed, but certain death.

*Herman E. Compter, Chauncey B. Garver* and *Edmond K. Leach* for respondent. I. The Surrogate's Court was without jurisdiction to grant letters of administration if the alleged decedent was not in fact dead. (*Scott* v. *McNeal*, 154 U. S. 34; *Roderigas* v. *East Riv. Sav. Inst.*, 63 N. Y. 460; *Matter of Killan*,

172 N. Y. 547.) II. Appellant should have applied, and may still apply, for letters of administration under subdivision 2 of section 119 of the Surrogate's Court Act. (*Cunnius* v. *Reading School Dist.,* 198 U. S. 458; *Blinn* v. *Nelson,* 222 U. S. 1; *Walz* v. *Dawson,* 235 Mich. 344; *Barton* v. *Kimmerley,* 165 Ind. 609; *New York Life Ins. Co.* v. *Chittenden & Eastman,* 134 Iowa 613; *Chamberlain* v. *Anderson,* 195 Iowa 855; *Savings Bank of Baltimore* v. *Weeks,* 110 Md. 78; *Matter of Emery,* 108 N. J. Eq. 601; *Carroll* v. *Carroll,* 60 N. Y. 121; *Marks* v. *Emigrant Ind. Sav. Bank,* 122 App. Div. 661.) III. There was no evidence of Max Goldstein's death sufficient to justify a decree directing respondent to pay the balance in his bank account to appellant as administratrix. (*Weitling* v. *Sorenson,* 254 App. Div. 539; *Lasher* v. *Gerlach,* 107 Ind. App. 572; *Century Ind. Co.* v. *Norbut,* 117 N. J. Eq. 584; *Southern Glass Co.* v. *Beverly Dairies,* 7 Cal. App. 2d 451; *Matter of New York State Labor Relations Bd.* v. *Holland Laundry, Inc.,* 294 N. Y. 480; *Matter of Wyllie,* 134 Misc. 715; *Matter of Wilbert,* 228 App. Div. 703; *Marks* v. *Emigrant Ind. Sav. Bank,* 122 App. Div. 661.)

DESMOND, J. In 1946, appellant Erna Goldstein obtained from the Surrogate's Court of New York County letters of administration on the estate of Max Goldstein, her father, alleging in her petition that her father had been a resident of The Netherlands and had died in 1944, the asserted basis for jurisdiction in New York County being that New York County was the situs of a debt owed by respondent National City Bank of New York to Max Goldstein. In 1947, petitioner as such administratrix brought the present discovery proceeding in the same court. In her petition she alleged that decedent had a credit balance with respondent bank in the amount of about $9,000, in a deposit account which he had opened by mail from The Netherlands in 1939, and that respondent bank had refused to turn over said fund to the petitioner, wherefore she prayed the Surrogate to order such delivery to her. The bank in its answer admitted that it had the moneys on deposit to Max Goldstein's credit but denied knowledge or information as to his alleged death, and asserted that his death had not been established by the petitioner, that the Surrogate had made no decree determining such fact, that death was a necessary jurisdictional fact and that, accordingly, petitioner's letters of administration were void.

There was then a trial before the Surrogate at which petitioner testified that she and her father had both been residents and citizens of Amsterdam in The Netherlands, that she had last seen him in 1942, in Amsterdam, at which time the two agreed that they would go into hiding because of their fear of the German forces. She offered in evidence before the Surrogate, on the trial of this proceeding, a translation of an authenticated decree of the District Court of Amsterdam, dated January 23, 1947, which decree directed the Register of Civil Records of that city to record a document which certified that Max Goldstein had died at Auschwitz, Poland, on or about January 28, 1944. Auschwitz was the site of one of the German concentration camps. The Amsterdam decree was based, as is stated therein, on a certificate or declaration (which does not appear in the record) of the Dutch Red Cross, which certificate or declaration was, apparently, to the effect that a man by the name of Max Goldstein of the same age, description and residence as petitioner's father, had died at Auschwitz on January 28, 1944. It further appeared from the testimony before the Surrogate that the Amsterdam court which issued the decree was one of general jurisdiction, and that the decree was not issued in any proceeding concerned to do with administering the estate of Max Goldstein. The Amsterdam decree itself shows on its face that it does not purport to do more than order the recording, in the local vital statistical records, of the death of petitioner's father. A second exhibit before the Surrogate showed that an appropriate entry had thereafter been made in the civil registry of Amsterdam. On this proof the Surrogate found that the death of decedent had been established by competent proof, and signed a decree directing respondent bank to pay over to petitioner the balance standing to the credit of Max Goldstein.

On appeal to the Appellate Division, First Department, that court reversed (two Justices dissenting) "upon questions of fact and of law" and denied the application for discovery but "without prejudice to an application under Subdivision 2 of Section 119 of the Surrogate's Court Act". Neither the majority nor the dissenting Justices in the Appellate Division wrote an opinion, but the statement in that court's order that the reversal was on the facts as well as the law, plus the permission given therein for the making of a new application under

subdivision 2 of section 119 of the Surrogate's Court Act, sufficiently shows, we think, what the Appellate Division had in mind. Petitioner's letters of administration had been granted to her under subdivision 1 of section 119 of that act, which subdivision is the general statutory authority for an award of administration. However, subdivision 2 of section 119, referred to by the Appellate Division, provides for a somewhat different procedure, '' where a person of whose estate the surrogate would have jurisdiction if he were shown to be dead, disappears under such circumstances as to afford reasonable ground to believe that he is dead ''. In that latter case the Surrogate, on petition of a creditor or other person interested, may, under paragraph (a) of subdivision 2, grant letters of administration but only after the return of a citation issued '' to all of the parties who would be interested in the estate, if the alleged decedent were dead, and to the alleged decedent '', service being made on the alleged decedent by publication. Upon the return of such a citation and after proof taken before the Surrogate in a proceeding under subdivision 2 of section 119, the court, if it appear that the alleged decedent is dead and that he left no will, may make a decree determining the fact of death and awarding letters of administration. A difference between subdivision 2 of section 119, and subdivision 1 applicable in ordinary circumstances, is that if letters are granted under subdivision 2 of section 119 then '' in the event that the person upon whose estate such administration shall have been granted shall return, he may sue only the distributees for and recover the moneys or the value of other assets distributed to them in the administration of the estate '' (par. [c]). The Surrogate's decree in the present case, directed respondent bank to turn over the deposit moneys to petitioner as an administrator who had been appointed, without notice, under subdivision 1 of section 119, and so, if Max Goldstein should later be found to be alive respondent bank would be liable to him for payment of his deposited funds, despite the prior payment thereof to petitioner under the present order (*Scott* v. *McNeal*, 154 U. S. 34). *Scott* v. *McNeal* (*supra*) held that the appointment by a probate court of an administrator of the estate of a living person, without notice to him, was without jurisdiction and wholly void, as were all that administrator's acts, and that receipt of money by such an administrator did not

discharge a debt (154 U. S. at p. 49). In a later case, however, the Supreme Court said that, notwithstanding *Scott* v. *McNeal* (*supra*) a State statute was valid which provided for the administration of the estate of a person who later turned up to be alive, where the statute provided for notice to the absentee and gave him protection by allowing him a cause of action against the distributees for any assets turned over to them in the administration of the estate (*Cunnius* v. *Reading School Dist.*, 198 U. S. 458). After the *Cunnius* decision (*supra*) the New York Legislature, responding to suggestions made by the Commission to Investigate Defects in the Laws of Estates, enacted, in 1929 (L. 1929, ch. 229, § 8, as amd. by L. 1930, ch. 174, § 6), the new statutory plan found in subdivision 2 of section 119, above referred to. Thus, when the Appellate Division in the present case reversed on the facts and the law without prejudice to a new proceeding under subdivision 2 of section 119, it in effect said this: In view of the fact that Max Goldstein if alive, has had no notice either of the award of letters to petitioner or of the present discovery proceeding, and in the light of the *Scott* v. *McNeal* rule (*supra*), the proof here offered of death was insufficient, consisting, as it did, only of a decree of a foreign court based on a certificate that Max Goldstein appeared to be dead and that he had not been heard from for several years. It is not necessary to speculate as to what the Appellate Division meant in reversing " on the law " and we need not decide now whether that meant that the Surrogate's Court was wholly without jurisdiction and if so, whether that holding was correct. The Appellate Division's reversal on the facts was amply justified on the record here, particularly in view of section 309 of the Surrogate's Court Act which gives the Appellate Division " the same power to decide the questions of fact, which the surrogate had ". The permission given to appellant, by the Appellate Division's order here, to start anew under subdivision 2 of section 119, was proper as safeguarding the interests of all concerned.

The order should be affirmed, without costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DYE, FULD and BROMLEY, JJ., concur.

Order affirmed.