In the Matter of the Judicial Settlement of the Accounts of EMMA J. BALLARD and LUCY M. BALLARD, as Executrices, etc., of SEBASTIAN BALLARD, Deceased, Respondents.

FRANK BALLARD, Appellant.

Fourth Department, December 3, 1920.

**Wills — bequest of life insurance money payable to legatee — election by legatee between life insurance money and legacy.**

Where it was the evident purpose of a testator to make an equal distribution of his estate and to accomplish that purpose he assumed to dispose of life insurance money payable by the policy to one of the legatees, said legatee must elect whether she will take her legacy under the will or renounce the same and take the insurance money.

APPEAL by Frank Ballard from a decree of the Surrogate's Court of the county of Erie, entered in said Surrogate's Court on the 21st day of June, 1920, and also from a decree as resettled, entered in said surrogate's office on the 23d day of

June, 1920, and also from so much of an order entered in said surrogate's office on the 28th day of June, 1920, as denies an application to strike from the record a statement made by the surrogate, as follows: " The foregoing refusal to find is based upon the ground that the requests to find were not made until after the close of the trial," and for the failure of the court to amend the decree respecting the Storms judgment filed therewith.

*Ernest F. Kruse,* for the appellant.

*Ellis H. Gidley,* for the respondents.

PER CURIAM:

Sebastian Ballard obtained insurance upon his life from the fraternal organization known as the Maccabees, in the sum of $5,000, $2,000 of which was payable to his widow, Mary Ballard, and $3,000 to his daughter, Lucy M. Ballard. He paid all premiums thereafter assessed and at all times kept the certificate in his possession. Thereafter and on December 14, 1914, he executed his last will and testament. He died September 15, 1915, and his will was probated in November of the same year. His daughters Emma J. and Lucy M. Ballard were nominated as executrices, who qualified and have since administered his estate under his will. At the time of the issuance of the insurance certificate and upon his death his widow, Mary Ballard, six adult children and three minors, the children of a deceased daughter, were living. At no time before his death was his daughter Lucy aware of the existence of the insurance certificate or that she was named as beneficiary therein.

By his will the testator gave the use of his entire estate to his widow during her life, and then by separate bequests he gave to each of his children a " full and equal share of the estate," except he gave to his daughter Lena, who was a nun, the sum of $200, and by the 4th clause to the minor grand-children " their mothers' full share of the estate after the demise of my wife," and by the 9th clause he gave the following bequest to and for the benefit of his son Marty, who, counsel for the respective parties concede, was of dissolute habits: " I give and bequeath to my son, Marty Ballard, the

use of Three thousand dollars of insurance money, which shall, when received, be placed in a bank by my daughter Lucy M. Ballard, and she to pay him the interest semi-annually. In case of his death, same shall go to his children, if any. If not, to be equally divided among my heirs. Should his equal share exceed Three thousand dollars this shall be placed in some other bank and interest on same to be paid to him, as above described."

Some time after the death of the testator Lucy was paid the insurance money of $3,000 and deposited the same in the Erie County Savings Bank, to the credit of her sister, Emma J. Ballard and Lucy M. Ballard, trustees. Thereafter the interest upon such trust deposit was collected by the executrices and paid to and for the benefit of Marty for the period of some six years. After the death of the widow these compulsory proceedings for an accounting of the executrices were instituted. Thereupon the executrices transferred the deposit of insurance moneys of $3,000 to the individual credit of Lucy M. Ballard, who, upon the accounting, claimed and now claims individual ownership of the same.

By his will the testator gave to his widow the life use of all his property. It is therein provided that upon her death each of his children should have one equal share of all his property, except his daughter Lena, who was a nun, to whom he gave the sum of $200. The equal share of Marty was to be held in trust, and upon his death to be paid to his children, if any, and if none, to be divided among the heirs of the testator. It appears from the findings of the decree of the surrogate from which this appeal is taken, that the share of each of his several children, with the exception of Lena, was slightly above $3,000. The purpose of the testator, as appears from the provisions of his will, was to make an equal division of his estate among his children, and in order to accomplish such result the $3,000 of insurance money was utilized by the testator as though the same were assets of his estate. The surrogate determined upon the accounting, as appears from the findings in the decree, that the bequest in trust for Marty failed for the reason that the title to the insurance fund of $3,000 passed to the beneficiary named in the certificate and was no part of the property or estate of the testator. The

legatee Marty does not appeal and the standing of the appellant, Frank Ballard, a legatee under the will of the testator, to take and conduct this appeal, has not been brought in question and for that reason it is unnecessary to pass upon the question.

It may be that Marty will take an interest in the proceedings upon an accounting, which must be ordered.

It is conceded that the testator assumed the right to make a testamentary disposition of the insurance money payable to his daughter Lucy. It is equally clear that this was done by the testator for the purpose of making an equitable and, as he believed, an equal disposition of his property among his children. In these circumstances Lucy was compelled to elect whether she would take the legacy under the will or renounce the same and take the insurance money which it is conceded became her property upon the death of the testator. She cannot have both. This is settled by a long line of cases in England and in this country. There seems to be no dissent upon the subject. It was the subject of decision as early as the case of *Havens* v. *Sackett* (15 N. Y. 365). That case decides that where one accepts a benefit conferred under one provision of an instrument, he cannot repudiate it where it is to his disadvantage.

There are a great number of cases in this State and elsewhere declaring the same rule. As late as *Beetson* v. *Stoops* (186 N. Y. 463) the court again applied the rule of the *Havens* case, and stated that the rule does not rest so much upon presumption as upon the general principles of right, justice and fair dealing.

This court does not pass upon the question whether or not the election made by Lucy and ratified by the holding of the surrogate, to claim the insurance money, is conclusive and cannot be withdrawn. It may be upon a retrial before the surrogate that Lucy may elect to take her legacy under the will and make the trust fund to Marty good by the appropriation of the insurance moneys. If the election is found to be conclusive, it may be that the parties, notwithstanding the binding force of the election made, in order to carry out the last will and testament of their father, will consent that the election is timely. This court does not pass upon the question

whether, in the event of the failure of the appropriation of the insurance money to make good the trust fund for the benefit of Marty, the surrogate has power to appropriate the legacy to Lucy under the will, for such purpose.

All concur.

Decree, and order so far as appealed from, reversed, and proceeding remitted to the Surrogate's Court for a rehearing, with costs to appellant to abide event.