In the Matter of the Estate of HARRIET SCHULSINGER, Deceased.

Surrogate's Court, Bronx County, November 19, 1946.

*Whitestone, Sankin & Tepper* for Mayton M. Schulsinger, administrator, petitioner.

*Norbert Ruttenberg* and *Henry G. Friedlander* for respondents.

HENDERSON, S. The only issue remaining for determination in this discovery proceeding is as to whether the decedent made a gift of her engagement and wedding rings to her mother. There are two respondents, the father and the mother of the deceased.

The gift is alleged to have been made on May 19, 1942, on the occasion of the decedent's transfer from one hospital to another. She died on May 23, 1942.

The administrator, who was her husband, was employed by her father. The two rings in question were purchased by her father and given to her by her parents. During her illness, all the expenses for her care were paid by her father.

Two witnesses other than the respondents testified to the occurrence which took place just before the decedent was removed from the hospital at which she had been a patient.

The witness, Elsie Feldman, testified: " While we were waiting for the ambulance to take her from one hospital to the other, she took off those two rings and she said, ' Here, Mother, I want you to have these. Wear them always, because I won't be needing them any more.' "

The witness further testified that the decedent handed the rings to her mother. The witness also said: " And she told her mother to wear them always, and she should keep them because she don't (pause) because she is not going to come home no more."

Frances Ackerman, a sister-in-law of the father, testified: " She said ' Here, Ma, I want you to keep these because I don't expect to pull out of this ' something to that effect."

The court is satisfied that the decedent intended to make a gift *causa mortis* of these rings to her mother. She believed that she would probably succumb to her illness and she did die of that ailment. There was a delivery.

The administrator takes the position that there was no acceptance of the gift by the mother. The basis for that contention is the claimant's own testimony. It is the general rule that an acceptance will be implied, where the gift is beneficial to the donee. (*Beaver* v. *Beaver,* 117 N. Y. 421; *Matter of Pastore,* 155 Misc. 247, 255.)

The claimant testified: " All she said was, ' Mother, I am being transferred from this hospital to another.' She didn't want to go. And she says to me, ' You take these rings and keep them.' Whether she meant just keep them for a while, I don't know. I couldn't read her mind. But that's the words that she said to me."

In *Matter of Cardwell* (268 App. Div. 514, affd. 295 N. Y. 916) the question of a gift of a bankbook was involved. The decedent gave the bankbook to one Rowenhagen saying: " If anything happens to me or I should not come back, I want Bob to have this." The night before the death of the deceased, Rowenhagen took the bankbook from his desk and handed it to Bob. Bob said: " I don't want it. Let us wait and see what is going to come of this." The bankbook was replaced in Rowenhagen's desk where it remained until the decedent's demise. It was there held that there had been a delivery in the decedent's lifetime. The question of whether there had been an acceptance was not discussed. Bob claimed the bankbook and the proceeds of the account. The court held there had been a gift *causa mortis.*

It is not surprising that at the time this claimant received the rings, she came to no conclusion as to whether she was a donee or a custodian. It was a solemn and tragic moment. Mother and daughter believed that their separation by death was imminent. The receipt of the rings was of little moment at that time. The incident could only have had the effect of further stirring the emotions and lessening her capability of logical reasoning at that time.

A gift *causa mortis* can only be completed by the death of the donor, and no acceptance is necessary until that event.

I find that the wedding ring and the engagement ring are the property of the respondent, Charlotte Ackerman.

She admits possession of the silver fox jacket, the drapes and bedspread and the two pieces of leather luggage. She has

consented to turn them over to the administrator. The decree may contain such a direction.

She also admitted that she had had the wrist watch but that it was lost. The only evidence of value is her testimony that her best recollection is that she paid $42.50 for the watch which she gave to her daughter as a birthday present. The value of the watch is fixed at that sum. The respondents have paid a funeral bill in excess of that sum. Such amount may be applied in reduction of the claim for funeral expenses.

In all other respects, this proceeding is dismissed on the merits as to both respondents.

Settle decree.